CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 31 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALICIA THOMAS, | ) | |
| | ) | Civil Action No. 7:07CV00435 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Alicia L. Thomas, was born on August 25, 1963 and eventually completed the requirements for a high school diploma. While plaintiff has worked in several jobs, the Administrative Law Judge determined that her employment did not reach the level of substantial gainful activity. (TR 25-26). On October 31, 2004, Ms. Thomas filed an application for supplemental security income benefits. An earlier application for such benefits had proven unsuccessful. In filing her current claim, Ms. Thomas alleged that she became disabled for all forms of substantial gainful employment on September 23, 2002 due to hepatitis C, arthritis, migraine

headaches, kidney infections, and deformity of the right kidney. Ms. Thomas now maintains that she has remained disabled to the present time.

Plaintiff's application for supplemental security income benefits was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated July 26, 2006, the Law Judge also determined that Ms. Thomas is not disabled. The Law Judge found that plaintiff suffers from hepatitis C; fibromyalgia; arthralgia; migraine/attention headaches secondary to narcotic withdrawal; depression/anxiety; and drug addiction. The Law Judge assessed Ms. Thomas's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work (i.e., she can sit six hours a day, stand and walk at least two hours a day, lift and carry up to 10 pounds frequently and 20 pounds occasionally) that involves only occasional postural activities (climbing, balancing, stooping, kneeling, crouching, and crawling), avoids all exposure to hazards (such as moving machinery and heights), avoids concentrated exposure to fumes, and that involves only simple tasks and no interaction with the general public.

(TR 22-23).

Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge ultimately concluded that Ms. Thomas remains capable of performing several specific sedentary work roles which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Ms. Thomas is not disabled, and that she is not entitled to supplemental security income benefits. See, gen., 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the

2

final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Thomas has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. As reflected above, the Administrative Law Judge decided this case at the fifth and final stage of the sequential disability analysis set forth under 20 C.F.R. § 416.920. The Law Judge relied on testimony of a vocational expert in assessing plaintiff's capacity to perform sedentary work roles, given Ms. Thomas's particular combination of age, education, and prior work experience, and considering the residual functional capacity as found by the Law Judge. However, the court does not believe that the hypothetical question put to the vocational expert accurately stated the nonexertional limitations found by the consultative psychologist who examined Ms. Thomas at the behest of the Commissioner. In such circumstances, the court is constrained to conclude that there is "good cause" for remand of the case to the Commissioner for further development and consideration.

3

Case 7:07-cv-00435-GEC   Document 18   Filed 03/31/08   Page 3 of 9   Pageid#: 74

Apparently, as a result of notations of emotional symptoms by plaintiff's treating physicians, the Disability Determination Services referred Ms. Thomas to Dr. Annemarie Carroll, a clinical psychologist, for a mental status examination. Dr. Carroll submitted a report following an assessment on January 11, 2005. Dr. Carroll reviewed Ms. Thomas's medical records. The psychologist also conducted a clinical interview. Dr. Carroll diagnosed recurrent, severe major depression; crack cocaine abuse; and history of polysubstance abuse. The psychologist assessed plaintiff's GAF as 45.[1] Dr. Carroll offered the following overall assessment:

> Ms. Thomas is able to carry out simple instructions. However, her ability to learn more complex job-related tasks is likely to be complicated by her fatigue, low levels of energy, motivation and loss of interest. She reports deterioration in personal hygiene, stating that she only bathes about twice a week. This may impair her ability to work effectively with coworkers and the general public. She also reports a history of problems with authority in previous jobs and reports significant irritability at this time. This makes it likely that she would have difficulty interacting appropriately with a supervisor. The severity of her depressive symptoms suggest that she would have difficulty maintaining regular attendance on the job. Her history suggests limited coping skills. This, along with her history of impulsivity, current irritability, and the severity of her depressive symptoms, suggests that she would have difficulty managing the daily stressors of employment.

(TR 332).

At the administrative hearing, the Administrative Law Judge posed a variety of hypothetical questions to a vocational expert. Some of the questions assumed residual functional capacity for light exertion, while others assumed residual functional capacity for sedentary exertion.[2] In

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 50 and 41 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision. Washington, D.C., American Psychiatric Association, 2000. P. 48.

[2] As noted above, the Law Judge ultimately decided that plaintiff's physical problems limit her to no more than sedentary exertion.

4

evaluating plaintiff's vocational capacity for performance of sedentary work roles, the Law Judge posed the following question:

> Okay. Assume that you're dealing with a person who can do the following, lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk at least two hours in an eight hour day, sit about six hours in an eight hour day, push/pull unlimited, except for the lifting and carrying, postural activity only occasionally, that is, climbing, balancing, stooping, kneeling, crouching, crawling, again, avoid all exposure to hazards such as heights and moving machinery and avoid concentrated exposure to fumes, could such a person do the claimant's past work as actually performed?

(TR 451-52). In response, the vocational expert identified potential jobs as a cashier, addresser or label affixer, cutter/paster, surveillance monitor, and assembler. (TR 453). When asked to assume that plaintiff is limited to work involving simple tasks and no interaction with the general public, the vocational expert testified that plaintiff would be unable to perform the cashier job, but that the other work roles would not be affected. (TR 455). When asked by plaintiff's attorney to consider the issue of absenteeism, the vocational expert opined that one day's absence per month might be tolerated, but that more than one day would not. (TR 457).

The court does not believe the questions put to the vocational expert properly incorporated the nonexertional limitations cited by Dr. Carroll. For example, the psychologist noted potential problems in interacting not just with the general public, but also with co-workers and supervisors. The psychologist forecast problems in maintaining regular attendance as well as limited coping skills. Most importantly, Dr. Carroll opined that plaintiff's depression would affect her capacity to deal with the stress of regular employment. Stated differently, the court does not believe that the questions put to the vocational expert properly assume the limitations normally associated with a severe major depressive disorder.

5

In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

Inasmuch as the hypothetical questions put to the vocational expert did not include all of the nonexertional limitations documented in this case, the court must conclude that the Law Judge's reliance on the vocational expert's testimony in finding residual functional capacity for specific sedentary work roles is not supported by substantial evidence.

In a memorandum in support of his motion for summary judgment, the Commissioner argues that the Administrative Law Judge might properly discount certain of Dr. Carroll's findings. The Commissioner cites two reasons in support of this assertion. First, the Commissioner maintains that Dr. Carroll's clinical findings do not support her overall diagnosis of severe depressive disorder or the vocational limitations said to be associated therewith. Second, the Commissioner points out that a nonexamining state agency psychologist considered Dr. Carroll's assessment and produced findings as to work-related emotional limitations which would not preclude performance of the sedentary work roles cited by the Law Judge.

As for the argument suggesting a discrepancy between Dr. Carroll's clinical findings and her overall assessment, the court notes that the psychologist specifically observed impairments of attention and concentration (TR 331). Dr. Carroll described significant deterioration in personal hygiene, which she associated with plaintiff's depression. (TR 331-32). More important, Dr. Carroll

6

explicitly relied on plaintiff's medical history in determining that Ms. Thomas suffers from a severe, longstanding depressive disorder. After reviewing the medical file, the psychologist reported as follows:

> Ms. Thomas states that she was hospitalized once in the 1990's at Roanoke Memorial Hospital for depression, but states that she left after only a day because "I didn't like it." She received psychotherapy in her teens but doesn't recall the details. More recently, she states that she attended psychotherapy with Gail Diehl at Piedmont Community Services off and on for 4 years after being released from prison. However, she does not feel that it was helpful. She says that she is not seeing a therapist now because of transportation problems. For the past 2 years, Dr. Baja has prescribed her Zoloft, 50mg qd and Lorazepam, 1 mg prn. She says that the Zoloft was initially helpful, but does not feel that it is as effective now. Dr. Bajwa also prescribes Promethazine 25 mg q6h, Methadone, 40 mg bid, and Premarin (dosage unavailable). He began prescribing Aricept 10 mg a couple of months ago because of her complaints of memory problems. Ms. Thomas states that she is compliant with her medication regimens.

(TR 330-31). Finally, the court notes that Dr. Carroll's assessment is totally consistent with that of Dr. Gurpreet Bajwa, plaintiff's treating medical doctor. Dr. Bajwa has noted on several occasions that plaintiff's depression and anxiety limit her ability to work, especially with other people. The court believes that this observation supports those of Dr. Carroll. In short, the court does not agree that Dr. Carroll's assessment is undocumented or inconsistent with her clinical findings or the overall medical record.

It is true that a nonexamining state agency psychologist reviewed the medical record, including Dr. Carroll's report, and produced findings which indicate no more than moderate limitation as to specific, work-related emotional components. (TR 373-75). However, the court does not believe that the Commissioner's reliance on the nonexamining psychologist's report is warranted under the circumstances of this case. The governing administrative regulations make it clear that, as a general matter, more weight should be given to the opinion of a medical source who

7

has examined the claimant than to the opinion of a source who has not examined the claimant. 20 C.F.R. § 416.927(d)(1). Unlike the state agency psychologist, Dr. Carroll, and for that matter Dr. Bajwa, had the opportunity to personally view, examine, and test Ms. Thomas. Dr. Carroll noted clinical manifestations of severe depression, and she linked these findings to specific work-related nonexertional limitations. The psychologist opined that plaintiff's GAF is 45, which is also indicative of serious symptoms or serious impairment in overall functioning. The court does not believe that the Law Judge's reliance on the nonexamining psychological report is consistent with the administrative regulations or the objective evidence in the case.

As noted above, the need for a consultative psychological evaluation was suggested by the reports from plaintiffs' treating physicians. Recognizing this need, the state disability agency commissioned Dr. Carroll to conduct a psychological study. The state agency, and not Ms. Thomas, chose Dr. Carroll to perform the clinical examination. Nevertheless, the Law Judge chose to credit the report from a psychologist who did not examine the claimant and whose findings are inconsistent with the observations of plaintiff's treating physician. It seems to the court that if the Commissioner felt that there was good reason to believe that Dr. Carroll's assessment was faulty, incomplete, or inconsistent, the appropriate course would have been to require Ms. Thomas to submit to examination by another medical consultant approved by the Commissioner. See 20 C.F.R. § 416.917. Stated differently, if a psychological consult was felt to be necessary in the first place, it becomes difficult to justify denial of the claim when the consultative evaluation performed at the behest of the state agency proved favorable to the claimant's position.

For the reasons stated, the court believes that it is necessary to remand this case so that proper and comprehensive hypothetical questions can be put to a qualified vocational expert. It can then

8

be determined whether plaintiff can perform any specific work roles, given her particular combination of exertional and nonexertional impairments, and considering her age, education, and lack of past work experience. See 20 C.F.R. § 416.920(g). An appropriate order of remand will be entered this day. Upon remand, the Commissioner shall conduct a new administrative hearing, at which both sides will be allowed to present additional evidence and argument.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 31st day of March, 2008.

*/s/ Glen Conrad*
United States District Judge

9

Case 7:07-cv-00435-GEC   Document 18   Filed 03/31/08   Page 9 of 9   Pageid#: 80